UNITED STATES of America, Plaintiff,

v.

HUCK MANUFACTURING COMPANY, Townsend Company, A. Watson Armour, III, Fred R. Dickinson, Defendants.

Crim. No. 39017.

United States District Court
E. D. Michigan, S. D.
March 13, 1963.

777

CharlesCharles R. Esherick, Jack Lipson, Antitrust Division Dept. of Justice Washington, D. C., Lawrence Gubow, U. S. Atty., Detroit, Mich., for plaintiff.

James E. Haggerty, Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr, Arthur W. Dickey, Harness, Dickey & Pierce, Detroit, Mich., for Huck Mfg. Co. and A. Watson Armour, III, defendants.

Daniel J. Tindall, Jr., Dickinson, Wright, McKean & Cudlip, Detroit, Mich., T. W. Pomeroy, Jr., Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., for Townsend Co. and Fred R. Dickinson, defendants.

KAESS, District Judge.

This is a proceeding to determine criminal liability under the Sherman Act. The defendants are charged with conspiracy in restraint of trade and conspiracy to monopolize through entry into a restrictive patent arrangement. The defendants have moved the court for judgments of acquittal at the close of the Government's case.

Simplifying, or perhaps over-simplifying, the Government has established the following, at least prima facie: Huck owns patents and has entered into a continuing arrangement with Townsend under which the patented product, a metal fastening device, is manufactured and sold at prices determined by Huck, no other firm is permitted to engage in the manufacture and sale of the product, and each firm is entitled to exploit improvements and related products developed by the other.

The Government takes the position that such an arrangement inevitably tends to impair competition and to lead to monoply, that *per se* such an arrangement must be illegal. It has indicated that it does not consider the problem of defining the relevant market to be part of its case, or even part of the defendants' case. The practical effect of adopting the Government's position would be more rigorous than merely shifting to the defendants the burden of justifying the

patent arrangement on economic grounds. Indeed, if the court understands the Government's position correctly, it would foreclose the defendants from attempting any proof that the arrangement was justified on economic grounds. While the Government has shown that the sale of the product forms some appreciable part of interstate commerce, it has declined to inform the court and the jury what positions are held by the defendants in their industry. The word "declined" is appropriate since the grand jury had found the corporate defendants to be "the two dominant manufacturers of lockbolts [the product manufactured and sold under the patent arrangement]," which are so far superior to other fastening devices that "particularly in the aircraft manufacturing industry, once the use of the lockbolt fastener has been specified by a manufacturer's engineering staff, other fastening devices cannot thereafter be readily substituted."

 It is my opinion that the evidence is not sufficient to establish criminal liability under the Sherman Act. One or another of two things must be shown by the Government to establish the charges of conspiracy in restraint of trade and conspiracy to monopolize. The object of unduly restraining trade or monopolizing must be disclosed by the agreement itself, or else the circumstances surrounding the agreement must be such that accomplishment of its objects would naturally result in undue restraint of trade or monopolization.

██ With respect to Count One, which charges conspiracy in restraint of trade, I think it is essential for the Government to establish that the defendants have derived some advantage from the patent arrangement beyond those advantages that full exploitation of the patents would normally provide. The Government's principal witness, Robert Looker, testified that Huck found it necessary to provide another source of supply in order to secure orders in the aircraft manufacturing industry, and that labor demands made it impossible for Huck to compete in price. From his testimony, it might be inferred that the restrictions under the patent arrangement were thought necessary in order for Huck to exploit its patents fully. The Government has not shown what would be a normal and reasonable reward in exploiting these patents, nor has it shown that the patent arrangement was designed to secure a reward beyond that. No close analysis of the patents' superiority in relation to pricing has been attempted by the Government. In United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, such an analysis revealed the unlawful nature of a patent arrangement in striking fashion. Nor has the Government attempted to demonstrate that the defendants in any way dominated their industry. In every case that has come to my attention in which a patent arrangement was held invalid the group of firms taking part were in some manner dominant. E. g., United States v. Line Material Co., 333 U.S. 287, 68 S.Ct. 550, 92 L.Ed. 701; United States v. New Wrinkle, Inc., 342 U.S. 371, 72 S.Ct. 350, 96 L.Ed. 417. Clearly, the dangers of price restrictions are greater where they prevail throughout the major part of an industry.

██ With respect to Count Two, which charges conspiracy to monopolize, the Government has not shown that the defendants' object in entering into the arrangement was to monopolize. Upon the evidence the Government introduced, the jury could only speculate as to what monopoly power in the defendants' industry might mean and whether the defendants' arrangement was calculated to achieve it. Under Count Two, it is necessary to establish object or purpose rather than possession of monopoly power. But still the defendants' relative position is important in determining object or purpose. An agreement might be considered to be calculated to achieve monopoly power when adopted by firms enjoying 80 per cent of the market, but not when adopted by firms enjoying 10 per cent of the market.

To conclude, it has not been shown that the object of defendants patent arrangement was to secure a greater reward than that attributable to the superiority of the products, or to achieve monopoly power.

The motions for judgments of acquittal are hereby granted.